1048

Esther James, Plaintiff, v. Adam C. Powell, Jr., Defendant.

Supreme Court, Trial Term, New York County, October 27, 1966.

*Raymond Rubin* for plaintiff. *Henry R. Williams, Thomas V. Sinclair, Jr., Lawrence R. Bailey* and *William C. Chance, Jr.,* for defendant.

Matthew M. Levy, J. After duly obtaining a money judgment in this court against the defendant, Adam Clayton Powell, Jr. (see *James* v. *Powell,* N. Y. L. J., April 8, 1963, p. 2, col. 8; April 9, 1963, p. 2, col. 2, mod. 20 A D 2d 689, affd. 14 N Y 2d 881, cert. den. 379 U. S. 966) and being unable to collect the same by execution, the plaintiff, Esther James, endeavored to obtain payment thereof by utilizing the special supplementary proceedings authorized by article 52 of the CPLR, which, among other things, provided for examination under oath of a judgment debtor in respect of his assets. The plaintiff also instituted an action against the defendant (and his wife) in which damages were sought for fraud and conspiracy, in that the defendant Powell allegedly transferred certain of his property so as to evade the payment to the plaintiff of the judgment hereinbefore referred to (see *James* v. *Powell,* 25 A D 2d 1; 26 A D 2d 525). In that action, the plaintiff sought to obtain a pretrial examination under oath of the defendant by invoking the disclosure proceedings provided for in CPLR art. 31.

The defendant did not honor any of the subpoenas or orders requiring him to appear for such examinations — on five separate occasions. The plaintiff made several applications before a number of Justices of this court to punish the defendant for civil contempt. None resulted in the defendant's appearance for examination.

Section 753 of the Judiciary Law, providing for civil contempt, states that " A court of record [which, of course, the Supreme Court of this State is] has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, or prejudiced, in any of the following cases: *   *   *

" 3. A party to the action or special proceeding *   *   * for any other disobedience to a lawful mandate of the court." *   *   *

" 5. A person subpœnaed as a witness, for refusing or neglecting to obey the subpœna, or to attend *   *   * as a witness."

Section 750 (subd. A) of the Judiciary Law provides that " A court of record has power to punish [by fine or imprisonment or both] for a criminal contempt, a person guilty of *   *   *

" 3. Wilful disobedience to its lawful mandate."

On November 26, 1965, the defendant was duly served with a subpœna in supplementary proceedings, requiring his appearance in court on December 16, 1965. He ignored the subpœna. On application to the court, the plaintiff obtained an order requiring the defendant to show cause why he should not be " punished for contempt ". The defendant was served with that order to show cause on December 20, 1965. It was returnable at the Special Term for Motions of this court on January 7, 1966. The motion was duly adjourned to January 12, 1966. On that date, the defendant did not appear. The plaintiff orally moved (in consonance with the provision in the order to show cause that the plaintiff might ask for " other and further relief ") for leave to include in her motion an application to punish the defendant not only for civil contempt (to which relief the order to show cause and the supporting affidavit might — it was thought — be construed to be limited), but for criminal contempt as well. On July 25, 1966, the learned Justice presiding at Special Term denied the plaintiff's motion. Thereafter, and on August 1, 1966, the plaintiff's attorney wrote a letter to the Justice requesting " reargument of your decision denying the motion to punish the defendant Adam Clayton Powell, Jr. for contempt — both civil and criminal *   *   * and upon the reargument hold the judgment debtor Adam Clayton Powell, Jr. in civil and/or criminal contempt." A copy of that letter was sent to the defendant's attorney.

On August 3, 1966, the court decided that it " will hear counsel on the plaintiff's application for reargument *   *   * on August 9, 1966 " (N. Y. L. J., Aug. 8, 1966. p. 8, col. 4). The defendant's attorney was duly notified accordingly, and, on the

date fixed, counsel for both parties appeared. The defendant's attorney raised the issue that the defendant had not been duly served with the order to show cause. Both counsel consented in open court to proceed forthwith to a trial by the court at Special Term as to the adequacy of the service. Such hearing was held on August 9 and 12, 1966, before the Justice there presiding, and the court ruled that the defendant was duly served (N. Y. L. J., Aug. 29, 1966, p. 14, col. 6). During and at the close of that hearing on the traverse, it was made clear beyond peradventure of doubt that the defendant was now being proceeded against for criminal contempt too, and in respect of all of the alleged disobediences by the defendant of the mandates of the court. The Justice at Special Term indicated that there should be a trial on that score as to whether the defendant's disobediences were " wilful ", and invited expressions of counsel's views as to the forum for that trial — that is to say, a Judge alone, a Referee alone, or a Judge and jury. The plaintiff's attorney stated that he preferred Judge or Referee; the defendant's counsel informed the court that he wished a trial by jury, and submitted a proposed order to that effect.

On September 16, 1966, the learned Justice at Special Term signed and entered an order, which, among other things, formally granted the plaintiff's motion for reargument, recalled the prior order denying the motion to punish for contempt, sustained the service of the order to show cause, and " Ordered on the judicially noticed record in this proceeding of prior adjudications of contempt against this defendant that this special proceeding to punish the defendant Adam Clayton Powell, Jr. for a criminal contempt pursuant to Judiciary Law, Section 750.A.Sub. 3. be and hereby is granted to the extent of directing a trial to a jury of the issue of the wilfulness as determinant of the guilt of the defendant Adam Clayton Powell, Jr. of criminal contempt in failing to appear pursuant to the subpœna on the 16th day of December 1965, and on prior occasions including the 20th day of September 1963, the 1st day of May, 1964, the 27th day of November, 1964, and the 24th day of November 1965."

The order also directed that this special proceeding and the afore-mentioned issue be placed on the appropriate Jury Trial Calendar for September 21, 1966. A copy of this order with notice of entry was duly served upon the defendant's attorney. When the cause appeared upon the Jury Day Calendar, the defendant was represented by counsel, and it was duly assigned for trial to that part of the court at which I was presiding. The issue was reached for trial on my calendar on October 5, 1966.

The defendant, through his attorney, interposed two objections when the matter was reached for trial before me — one, to the jurisdiction of the court over the person of the defendant; and the other, to the jurisdiction of the court over the subject matter of the proceeding. I noted at the time that I deemed myself bound by the order of Special Term and that it made " the law of the case "; and that the order, in respect of the trial, directed a jury determination of the narrow and limited " issue of the wilfullness as determinant of the guilt of the defendant Adam Clayton Powell, Jr., of criminal contempt in failing to appear " for examination on the several dates specified in the order. I, nevertheless, informed the defendant's counsel that, if they wished, I would study the points raised by them upon receipt of briefs — pro and con from the respective parties — reserving decision on the objections in the meanwhile, but that I would not permit the trial to be postponed or delayed — since the issues raised by the defendant had not been previously supported by briefs as theretofore requested by me. (Indeed, the briefs were not filed until some time later.) Thereupon, the defendant's four counsel, after consultation among themselves — at least — and with full opportunity to confer with their client, elected not to participate in the trial. Thus, the defendant voluntarily and deliberately assumed the calculated risk of the possible invalidity of his objection that the court had no jurisdiction — insofar as the conduct of the trial before me was concerned. During the trial, the defendant, through communication with his attorney, was given a further opportunity " to make a defense " (Judiciary Law, § 751). The defendant chose not to avail himself thereof.

The jury's verdict, after the presentation of proof by the plaintiff — oral and documentary — and the charge of the court, was that the defendant's disobedience was willful in each instance.

I hold that, when the court at Special Term, after hearing both parties, granted the plaintiff's motion to punish the defendant " for a criminal contempt   *   *   *   to the extent of directing a trial to a jury of the issue of the wilfullness as determinant of the guilt of the defendant Adam Clayton Powell, Jr., of criminal contempt ", the law of the case was thus established for the Trial Judge in a number of respects. At least one of them was that the court had jurisdiction over the person of the defendant and another was that the court had jurisdiction over the subject matter of the proceeding. (See, also, the holding of the Appellate Division in *Matter of Powell, Jr.* v. *Supreme Ct. of State of*

*N. Y.*, 26 A D 2d 779, denying the defendant's application for a writ of prohibition.)

It was the defendant who had requested that the disputed issue of " wilfulness " be disposed of by way of a jury trial. His plea in that regard was granted by the court at Special Term, and I, presiding at Trial Term, was proceeding accordingly. Whether the defendant's refusal " to make a defense " (Judiciary Law, § 751) before a jury was grounded upon a tactical or factual or hostile base, I need not now determine. Suffice it to say that, after careful consideration, it is still my view that the defendant has utterly misconceived the appropriate forum in which to press his jurisdictional objections as distinguished from the tribunal before which he was to contest the merits of the accusations of " wilful disobedience ".

Even were I inclined to disagree with my learned colleague, I shall not, in the circumstances, permit myself to arrive at a conclusion by which (to use the cogent language of the Appellate Division in a contempt case some years ago) I shall have " improperly arrogated [to myself] the power to pass upon, and in effect review, the validity of the orders of a fellow Justice of co-ordinate jurisdiction " (*Mount Sinai Hosp.* v. *Davis,* 8 A D 2d 361, 362, mot. for lv. app. den. 9 A D 2d 641). Indeed, both before and after the Appellate Division holding in the *Davis* case that " A judge  *  *  *  should not ordinarily reconsider, disturb or overrule an order in the same action of another court of co-ordinate jurisdiction " (pp. 362–363), I recognized — as said by the court in *Matter of Hines* (88 F. 2d 423, 425 [C. A. 2d]) and quoted by the Appellate Division in *Davis* — that " Such a rule is essential to an orderly and seemly administration of justice in a court composed of several judges " (see *Erdheim* v. *Mabee,* 109 N. Y. S. 2d 267, affd. 279 App. Div. 988; *Fried* v. *Lakeland Hide & Leather Co.,* 14 Misc 2d 305; *Matter of Lacaille* [*Feldman*], 44 Misc 2d 370, 373).

While laudably indefatigable in the persistent prosecution of his client's cause, the plaintiff's attorney has, it is true, been somewhat inept in a number of the processes invoked by him in this litigation; and I do not say that the defendant's objections to the jurisdiction — in their naked aspects — are altogether captious or specious. For example, in *Billingsley* v. *Better Business Bur. of N. Y. City* (232 App. Div. 227) following dicta in *Pitt* v. *Davison* (37 N. Y. 235) the court stated that under the facts there, " there was no jurisdiction of the person of plaintiff " on a motion to punish for criminal contempt, " since he was not [personally physically] served with the order to show cause and affidavits and did not voluntarily appear ". And, in *Sherwin*

v. *People* (100 N. Y. 351) the defendant disobeyed the subpœna of the District Attorney, and it was held that there was no lawful order and that therefore this was not indictable as a criminal contempt. But I need not labor further to ascertain for myself whether these precedents and others are or are not truly in point here — either on their own or in the light of later judicial and academic pronouncements (*People ex rel. Drake* v. *Andrews,* 197 N. Y. 53, 57; *Matter of Spector* v. *Allen,* 281 N. Y. 251, *infra*; *Matter of People* v. *Knapp,* 4 Misc 2d 449, 457, affd. 2 A D 2d 579, affd. 2 N Y 2d 913, affd. 357 U. S. 371; 2 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 2302.01); recent legislative enactments (CPLR 308, 2103, subd. [b], 2214, subd. [d], 2303, 2308, 5251); the fact that the defendant in the proceedings at Special Term waived any objections he may have interposed by consenting (as held by the learned Justice in his order) to the procedures there projected; and, most important, in view of an unusual set of circumstances spawned by the defendant's deliberate and unabashed defiance of the processes of the court, with its attendant deleterious and corroding impact upon the judicial system as a whole and its serious consequential effect upon the general maintenance of law and order in our community.

Not only has it been adjudicated at Special Term after traverse that the order to show cause bringing on this proceeding was duly served, and, thus, that the court has jurisdiction over the person of the defendant in that respect, and not only has the order of Special Term resolved the matter of jurisdiction over the subject matter by directing a hearing as to a precise factual issue upon which the trial court was to proceed, that this court has such jurisdiction over the subject matter has been specifically adjudicated in this very case by the Appellate Division (*Matter of Powell, Jr.* v. *Supreme Ct. of State of N. Y.,* 26 A D 2d 779, *supra*).

The objections of the defendant to the jurisdiction of the court are accordingly overruled. I need now be concerned only as to whether the defendant was accorded due notice in respect of the hearing conducted before me.

Special Term had denied the plaintiff's motion to punish the defendant for civil contempt as futile and useless, and the proceeding thus remained one to punish for criminal contempt. Section 751 of the Judiciary Law provides that, when a criminal contempt is not " committed in the immediate view and presence of the court, [in which case the contemnor] may be punished summarily ", " the party charged must be notified of the accusation, and have a reasonable time to make a defense ".

It is significant to note that the statute does not specify the precise nature of the notice or the amount of time to be given. The rationale of the provision has been expressed by the Court of Appeals in *Matter of Spector* v. *Allen* (281 N. Y. 251, 256–257): '' These statutory requirements are intended to protect the right of the accused to appear and defend himself. What constitutes sufficient notice and reasonable time to make a defense depends upon the particular circumstances of each case. The purpose of the requirement must never be lost sight of; the rights of an accused must always receive adequate protection.''

In short, this is a caveat that the defendant must be accorded '' due process ''; and that, in my opinion — whatever his attitude or character — he is entitled to receive. I am of the view — in the light of the proof and proceedings before me — that this defendant has been afforded due process without stint and to the utmost degree. (Cf. *Matter of Koota* v. *Colombo,* 17 N Y 2d 147, 151).

The order of Special Term, in its final decretal clause, provides '' that ultimate adjudication of the defendant's criminal contempt shall stand in abeyance for decision by the Trial Court.'' The defendant will be heard as to the punishment to be meted out to him. The time and place therefor are fixed as 10:00 A.M. of November 4, 1966, at Trial Term Part VIII of this court. I shall then also hear counsel as to the effect thereon of the decision of the Appellate Division in *James* v. *Powell,* rendered October 25, 1966 (26 A D 2d 295).