Matthew M. Levy, J.
(I)
Initially, the complaint set forth but one cause of action — that for a divorce by the plaintiff wife. It was grounded upon the recently enacted section 170 (subd. [6]) .of the Domestic Relations Law, which provides that such an action may be maintained when ‘ ‘ The husband and wife have lived separate and apart pursuant to a written agreement of separation * * * for a period of two years after the execution of such agreement and satisfactory proof has been submitted by the plaintiff that he or she substantially performed all the terms and conditions of such agreement.”
The complaint alleged compliance with the requirements above set forth as well as the following additional statutory requisites, which need not be quoted in haec verba: (1) That the agreement of separation be subscribed and acknowledged by the parties on or after April 27,1966 (the instant, agreement was subscribed and acknowledged on December 23, 1966) y and. (2) that the same be filed in the office of the clerk of the county wherein either party resides (a copy thereof was filed in the office of the County Clerk of Nassau County on December 27, 1966, which was then the place of residence of both of the parties). The plaintiff further alleged in her complaint that she has duly substantially performed all of the terms and conditions contained in the agreement which were on her part to be performed.
In his answer, the defendant husband admitted all of the material allegations of the complaint, and it is not disputed that the parties had separated for some time prior to, and were living apart at the time of, the execution of the agreement, and that they lived separate and apart and did not cohabit as husband and wife for a period of two years after its execution.
(II)
Prior to the trial, the plaintiff moved at Special Term for, among other things, an allowance of counsel fees to prosecute this action. My learned colleague then presiding denied the application without prejudice to renewal at the trial of the action.
*597 Also, just prior to the commencement of the trial and after the cause had been assigned to me for that purpose, the parties stipulated that the plaintiff’s complaint be amended to include a separate cause of action for the arrears of support under the separation agreement and for certain dental expenses incurred by the wife. The monthly support payments to the wife, provided for in the agreement, were discontinued by the husband in December of 1968, and, at the time of the amendment of the complaint, totaled $1,000. The dental charges involved amounted to $110. In order not to proliferate the legal proceedings so as to require other courts or Judges to hear and determine the several controversies between these litigants, I accepted the stipulation (see Silverman v. Rogers Imports, 4 Misc 2d 672 [1954]; Grobman v. Freiman, 3 Misc 2d 656, 659 [1956]; Farber v. Chein & Co., 13 Misc 2d 158, 160 [1958]).
(HI)
The separation agreement provides, in part, that:
‘‘ 4. The Husband shall (until termination thereof as hereinafter provided [in paragraph 5]), during the joint lives of the parties, pay to the Wife for her support and maintenance the following:
“ (a) The sum of $100.00 per month commencing January 1, 1967; and
“ (b) All medical and dental expenses incurred by the Wife; * * * J?
“ 5. In the event the Wife remarries, obtains her master’s degree or terminates her education (whichever first occurs), all obligations of the Husband hereunder for her support and maintenance shall cease.”
As part of her cause of action for divorce, the plaintiff demands judgment incorporating the agreement of separation by reference and not by merger therein, but rather that the agreement survive the judgment (in consonance with the clause in the agreement so providing).
The defendant interposed the following affirmative defense in his answer:
“4. That the aforesaid [separation agreement] * * * was invalid and void in that the same violated Section 5-311 of the General Obligations Law, in that in the terms of said writing it purported to relieve the husband from his liablity to support his wife.
“ 5. That by reason thereof, said agreement was void, and being void a conversion divorce may not be predicated upon the same since it was the contemplation of the Domestic Relations *598 Law that only valid separation agreements he the basis for a conversion divorce decree.”[1]
Some time prior to the trial the plaintiff moved at Special Term to strike the defense. The court, in its memorandum decision, stated that: “While the particular paragraph [5 of the separation agreement] offends public policy and is illegal, it does not vitiate the entire agreement as the husband would be liable for her support despite the occurrence of the specified events. Accordingly, the motion is granted.”
An appeal was taken by the defendant husband from this order, but it has not been prosecuted and he does not now dispute the wife’s entitlement to a divorce based upon the agreement of separation, and indeed makes provision for the granting of a decree of divorce to the wife in his counterproposed findings of 'fact and conclusions of law. What he does contest, however, is the legality of the support provision contained in paragraph 4 of the agreement, and he, therefore, opposes the wife’s claims to arrears, dental expenses and future maintenance thereunder. His contention is that since it has been decided that paragraph 5 of the contract is “illegal”, then paragraph 4 must fail as well, since they are both paragraphs of the same agreement.
(W)
On the issue of illegality, the defendant points to the prior holding as the law of the case and urges that it is binding upon me.
I recognize, of course, the established doctrine that a Judge “ should not ordinarily .reconsider, disturb or overrule an order in the same action of another court of co-ordinate jurisdiction ’ ’ (Mount Sinai Hosp. v. Davis, 8 A D 2d 361, 362-363 [1959] mot. for lv. to app. den. 9 A D 2d 641 [1959]; Matter of Haas, 33 AD 2d 1 [1969]).[2]
*599 However, the defendant misjudges the rule as it is applicable to the instant set of circumstances, in that he fails to distinguish between a Judge’s decision and dictum, between an order of the court and its opinion. I consider myself bound by the court’s determination, not its reasoning.
(V)
When the court at Special Term struck the defense interposed to the action for divorce based upon the separation agreement, that was a definitive judicial determination in this case which is controlling so far as I am concerned (and, with which decision, by the way, I agree). For, whether or not the questioned clauses are violative of public policy and of law, and are void or illegal, the basic factum of the agreement involved in the first cause of action herein was a marital separation — and it is that critical circumstance that is operative in respect of section 170 (subd. [6]) of the Domestic Relations Law providing for a divorce. As regards this aspect of the instant case, I need but refer to the comments in Gleason v. Gleason (26 N Y 2d 28), where Chief Judge Fuld, speaking for the court, said (pp. 35-36, 37):
‘1 Implicit in the statutory scheme is the legislative recognition that it is socially and morally undesirable to compel couples to a dead marriage to retain an illusory and deceptive status and that the best interests not only of the parties but of society itself will be furthered by enabling them (to extricate themselves from a perpetual state of marital limbo ’ (Adelman v. Adelman, 58 Misc 2d 803, 805; see, also Wadlington, Divorce Without Fault Without Perjury, 52 Va. L. Rev. 32, 81-87.) W #
‘ ‘ Reasonably and sensibly read, the statute, as a whole, points the construction that all that has to be proved is that there is some kind of formal document of separation [either a judicial decree or a written agreement] that the plaintiff has complied with its terms and that the parties have lived apart pursuant to the decree [or agreement] for two years after September 1, 1966.”
(VI)
However, I do not agree with my learned colleague when, in articulating the reasoning which gave rise to his conclusion, he characterized the questioned contractual paragraph as “ illegal.” True, certain (but not all[3]) of its provisions are interdicted by *600 the statute, and are, therefore, invalid, but that does not make them illegal.
Thus, in the recent case of McMains v. McMains (15 N Y 2d 283 [1965]) the majority speaks of such a contractual clause as “ void ” (p. 285) and makes clear that the “ continuing duty [of the husband to support his wife] cannot be escaped by reliance on any contract ”, and that “ any agreement so written, construed or applied is invalid” (p. 288). The dissent says the same thing in that regard — that “if the agreement were to relieve the husband of his obligation to support his wife, it would be void under old section 51 of the Domestic Relations Law (now General Obligations Law, § 5-311) and a court would, of course, be privileged to disregard it and modify the decree’s support provision, based as it was upon the invalid contract ” (p. 291). The legislation has “ stripped” both husband and wife “ of power to relieve ” “the husband from his liability to support his wife” and has “ rendered [them] incapable of bargaining away the woman’s right to the man’s support ” (Haas v. Haas, 298 N. Y. 69, 71, 73, 74 [1948]). Any such attempts are “prohibited” by the statute (Kyff v. Kyff, 286 N. Y. 71, 73 [1941]). Such contractual provision by the parties is ‘ ‘ contrary to the mandate ’ ’ of the statute (Haas, p. 72) and has been condemned as “void” (Tirrell v. Tirrell, 232 N. Y. 224, 229, [1921]; Haas, again p. 72) or “ invalid ” and as “ doomed to failure ” (Haas, also p. 72).
I do not go along with the thought that the single instance in the Haas opinion where the word “ illegal ” is used by the Court of Appeals (p. 71) is of significance in determining the point of view of the court insofar as an agreement like the present one is concerned. A full and fair reading of Haas, as shown hereinabove, indicates quite clearly that the tenor of the opinion as a whole is contrary to an assumed holding therein that every agreement between husband and wife relieving him of his duty to support her is per se to be pilloried as “ illegal.”[4]
*601 I do not perceive this to be an esoteric exercise projecting a semantic distinction without a substantive difference. For the legal consequence of an illegal bargain may in some cases be of different quality than that from one which is merely invalid. For example, in Foster-Fried “Law and the Family, New York ” (1966 ed., vol. 2, § 28:16, pp. 403-404) it is stated that ‘ ‘ A provision in a separation agreement exempting the husband from his obligation to support the wife is void, and may be given no effect at all, as in contravention of § 5-311 of the General Obligation Law. However, while that provision may be void, it does not vitiate the entire agreement, and the other provisions of the agreement may be valid and enforceable.” Thus, in Hoops v. Hoops (266 App. Div. 512 [1943]) the parties were divorced, the plaintiff wife being awarded $35 per week alimony. They later entered into a written contract whereby the defendant husband paid to the plaintiff the sum of $7,500, in consideration of the release by her of all claims for alimony and in lieu of dower; and simultaneously the parties entered into a stipulation, pursuant to which the judgment of divorce was amended by eliminating all provisions for the payment of alimony to plaintiff. Subsequently, defendant having inherited a $6,000 annual income for life, and plaintiff being then destitute, she sued to set aside the settlement and to reinstate the judgment provisions for her support. The Appellate Division (First Department) held that the agreement was properly set aside, to the extent that it released defendant from the obligation to pay alimony and modified the divorce decree accordingly. In that regard, the court said (p. 513): “We think the same principle of public policy which applies throughout the marriage renders unenforcible a contract relieving the husband from the legal duty which is generated by that relationship and which continues when the marriage is dissolved on account of his misconduct. ’ ’
But, in respect of other clauses in the agreement, the court held (p. 514): “ Nor should the release of dower executed by the plaintiff be set aside, even though she cannot be held to all the *602 provisions of the contract. To the extent that the agreement purported to relieve the husband from the duty to support his former wife, it was ineffectual, but it was not immoral or illegal.” (Emphasis supplied.)
In his volume on “Illegal Bargains ”, Professor Corbin states that ‘ ‘ In thousands of cases contracts have been declared to be illegal on the ground that they are contrary to public policy; and those two alliterative words are often used as if they had a magic quality and were self-explanatory ” (6A Corbin, Contracts, § 1375). The actuality is that illegality “ is not a simple concept ’ ’ and that it ‘ ‘ has many forms and a great variety of effects ” (§ 1374). And, in his usual pungent style, the author comments: “It is far from correct to say that an illegal bargain is necessarily ‘ void, ’ or that the law will grant no remedy and will always leave the parties to such a bargain where it finds them. Such general statements are indeed found in great number, faithfully reprinted in long columns of digest paragraphs; they render only a wearisome disservice when repeated with no reference to the facts of the cases in which they have been made.” (§ 1534.)
In my view, much of the confusion might be avoided if “illegality” were not so casually equated with “unenforceability,” and if the “ public policy ” involved in a specific case were not so meaninglessly referred to in respect of each concept. And this I say, notwithstanding that the American Law Institute’s Restatement of the Law (Contracts, § 512 [1932]) defined a bargain as 1 ‘ illegal within the meaning of the Restatement of this Subject if either its formation or its performance is criminal, tortious, or otherwise opposed to public policy ” (emphasis supplied). It is undeniable that, while an agreement ‘ ‘ opposed to public policy ’ ’ is usually ineffectual, and (in the light of certain circumstances) void or voidable, it does not follow that every such agreement is ipso facto “ illegal ” in the pristine sense that the term is generally understood — with all of its complications and consequences.
(VII)
This is not a suit by the wife to declare invalid so much of the agreement as relieves her husband of his duty to support her upon the happening of any of the contingencies specified in the agreement. Nor is it an action by her to recover under the agreement subsequent to the occurrence of any such event. It is not necessary, therefore, for me to endeavor at this time to apply or to reconcile the decisions in Leeds v. Leeds (284 App. Div. *603 869, affd. 308 N. Y. 991 [1955]) and Matter of Ripley v. Ripley (30 A D 2d 782 [1968], affd. 24 N Y 2d 770 [1969]). Nor is this an action by the wife to recover under an agreement made while the parties were living together (cf. Garlock v. Garlock, 279 N. Y. 337 [1939]); or where, having separated or being on the verge of separation, the parties entered into the agreement in a desire to reconcile their marital differences and adjust their property interests in an effort to restore the marriage relationship. (Lacks v. Lacks, 12 N Y 2d 268 [1963])[5].
The main thrust of the defendant’s argument, reduced to its simplest terms, comes to this: u I may not by agreement legally relieve myself of my duty to support my wife; therefore, I need not support her under so much of an agreement which does obligate me to do so, although she herself — at this time, at least — is satisfied to abide by the agreement”. The plaintiff, on the other hand, submits that, if she, as a wife living apart from her husband, cannot, as a matter of law, presently contract to relieve her husband of his obligation to support her at such future time when she is most likely able to support herself, then she is willing to accept the periodic payments from him provided for in the agreement for the rest of her life or at least until the contemplated event comes to pass.
I have not been referred to, nor have I found, any precedent in point. As a de novo proposition, it seems to me that there is a basic error in the defendant’s contention: the assumption that — by virtue of the prior judicial comment in this case that the agreement sued upon by his wife is illegal and unenforceable— he, the husband, may invoke the statutory provision which makes it impermissible for him to be contractually relieved of the duty to support his wife.
Of course, if the bargain between the parties, is tainted with an all-pervasive unlawfulness,[6] then the agreement in its entirety *604 will be struck down (Viles v. Viles, 14 N Y 2d 365 [1964])[7] But, in any specific instance before arriving at the conclusion as to whether or not the agreement will be enforced, the purposes underlying the statute should be understood and the person who is intended to be the beneficiary of the interdiction must be determined. (Cf. Steinlauf v. Delano Arms, 15 A D 2d 964 [1962].)
Indeed, even where a “ criminal ” aspect is involved in the transaction (see A. L. I. Restatement, Contracts, § 512, supra), the view has been expressed that ‘ ‘ If refusal to enforce or to rescind an illegal bargain would produce a harmful effect on parties for whose protection the law making the bargain illegal exists, enforcement or rescission, whichever is appropriate, is allowed.” (Restatement, Contracts [1932 ed.], § 601).
A fortiori, I hold that, in this case — where the agreement cannot properly be condemned as illegal — the party intended to be safeguarded by the statute should certainly not he deprived of that security by virtue of the statute. A principle or an enactment whose purpose it is to provide a shield of economic protection for the wife cannot be forged into an exculpatory sword to be wielded by the husband.
(VIII)
It is of no judicial concern at this time as to whether the support provisions of the agreement are adequate for the plaintiff. She does not raise the question, and there are no children of the marriage. In Winter v. Winter (191 N. Y. 462 [1908] )[8] — the court, in the course of its opinion, asked (p. 473): “ Does the contract in question ‘ relieve the husband from his liability to support his wife ’ in violation of the Domestic Relations Law? ” • — -and made the following response: “An agreement by the husband to pay such a sum for the support of the wife as is satisfactory to her, cannot be said to have that effect. * * * *605 She is the best judge of what she needs for her support and the amount may be fixed and settled by an agreement made after actual separation without violating any principle of law or any statute now in existence ” (pp. 473-474).
And it is at once of some comfort and consequence to recall that section 236 of the Domestic Relations Law provides that:
1 £ In any action or proceeding brought * * * for a divorce, the court may direct the husband to provide suitably for the support of the wife as, in the court’s discretion, justice requires, having regard to the length of time of the marriage, the ability of the wife to be self supporting, the circumstances of the case and of the respective parties. * * * Such direction may be made in the final judgment in such action or proceeding, or by one or more orders from time to time before or subsequent to final judgment, or by both such order or orders and the final judgment ” (emphasis supplied)[9].
(IX)
My conclusion is that the plaintiff is entitled to a judgment of divorce, in which judgment there shall be incorporated by reference (and survival therefrom without merger therein) the provisions of the separation agreement. It is my further holding that the plaintiff shall recover from the defendant the sum of $1,000 for arrears in support covering the period December 1, 1968 through September 30, 1969, with appropriate interest, and the additional sum of $110 for dental services, together with a counsel fee, plus the costs and disbursements of the action.
Settle decision and judgment accordingly. If the parties cannot agree upon a counsel fee for plaintiff’s attorney, I shall fix the amount upon receipt of exchanged memoranda, at which time I shall also pass upon proposed findings of fact and conclusions of law.

(1) The statute, insofar as here applicable, provides that “ Certain agreements between husband and wife [are] void”, in the following language:
“A husband and wife cannot contract to * * * relieve the husband from his liability to support his wife.”

(2) See, also, Erdheim v. Mabee, 109 N. Y. S. 2d 267, 269-270 (1951), affd. 279 App. Div. 988 (1952); Fried v. Lakeland Hide & Leather Co., 14 Misc 2d 305, 308 (1958); Sufrin v. Arbeau, Inc., 24 Misc 2d 909, 914 (1959), affd. 14 A D 2d 858 (1961); Aacon Contr. Co. v. Herrmann, 27 Misc 2d 197, 199 (1960); 18 Misc 2d 870 (1959), affd. 10 A D 2d 818 (1960); Matter of Lacaille (Feldman), 44 Misc 2d 370, 373 (1964); cf. James v. Powell, 52 Misc 2d 1048, 1052 (1966); writ of prohibition den., Powell v. Supreme Ct., 26 A D 2d 779 (1966), pet. for stay dsmd. 27 A D 2d 521 (1966), mod. James v. Powell, 32 A D 2d 517 (1969).

(3) So much of the separation agreement as provides that the present husband’s obligation to support his wife shall cease in the event she remarries is in consonance with existing law and is valid (Kirkbride v. Van Note, 275 *600 N. Y. 244, 249; Domestic Relations Law, § 248). However, this situation, of course, has not occurred in the case at bar and — while I advert to it — it is of no moment in respect to the controversy before me.

(4) It is to be noted that, in .the case at bar, what is involved is not the first clause of the statute — that “ A husband and wife cannot contract to alter or dissolve the marriage” (omitted in footnote No. 1). In such case, in the words of Judge (now Chief Judge) Fuizd in his concurring opinion in Lacks v. Lacks, 12 N Y 2d 268, 275 (1963) infra, — since the “ agreement, or one of *601 its provisions, induces a disruption of the marriage relationship, the agreement or offending provision should be stricken as illegal ”.
It should be noted, too (for the sake of completeness) that (by L. 1966, ch. 254, § 12, eff. Sept. 1, 1967) section 5-311 of the General Obligations Law was amended by adding thereto, the sentence that “An agreement, heretofore or hereafter made between a husband and wife, shall not be considered a contract to alter or dissolve the marriage unless it contains an express provision requiring the dissolution of the marriage or provides for the procurement of grounds for divorce.” That is not the ease in the separation agreement here involved.

(5) See 30 Brooklyn L. Rev. 133-135, and 14 Syracuse L. Rev. 682-683, for comments upon Garlock and Lacks.

(6) The defendant’s contention, that the presence of the supposedly “ illegal ” paragraph 4 must destroy any legal import of paragraph 5 of the agreement, has no merit. An illegal clause need not necessarily void the entire agreement. “1 The general rule is that, where you cannot sever the illegal from the legal part of a covenant, the contract is altogether void; but where you can sever them, whether the illegality be created by statute or by the common law, you may reject the bad part and retain the good ’ ”, Central New York Tel. & Tel. Co. v. Averill, 199 N. Y. 128, 140 (1910). This principle has been applied in cases too numerous to mention in order to uphold the valid portion of a partially invalid agreement, including several in which the “illegality” was an attempt to limit a husband’s obligation to support his wife. See, e.g., Rubinfeld v. Rubinfeld, 264 App. Div. 888 (1942); Hoops v. Hoops, 266 App. Div. 512 *604 (1943); Schiff v. Schiff, 270 App. Div. 845 (1946); Leeds v. Leeds, 284 App. Div. 869 (1954), affd. 308 N. Y. 991 (1955); cf. Lacks v. Lacks, 12 N Y 2d 268, 275 (1963).

(7) The 1966 legislation referred to in footnote 4, supra, is said to have been intended to overcome the effect of the decision in Viles v. Viles, 14 N Y 2d 365 (1964) (see Foster-Freed, Law and the Family, New York, Divorce Reform Law, an Analysis [1969], p. 42, § J.). In my view, the amendment may also have a bearing on the implications of Lacks v. Lacks, 12 N Y 2d 268, 275 (1963), supra.

(8) This is the landmark case which overruled earlier decisions requiring the intervention of a third person as a party to a support agreement between husband and wife, and which held such an agreement valid and binding although made directly between the spouses.

(9) Cf. McMains v. McMains, 15 N Y 2d 283 (1965), supra; see Matter of Calwil v. Calwil, 34 A D 2d 535, as to the Family Court; and see Shapiro v. Shapiro, 8 A D 2d 341, 342-343 (1959), quoted in Millner v. Millner, 60 Misc 2d 122, 136 (1969), as to the effect of the support practices of the spouses when General Obligations Law, § 5-311, is not involved.